UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Michael T. Koster,

       Plaintiff,

    v.                                   10-3003

Dr. A. Jelinek,
Mr. Bobby Leebold,
Ms. Anita Payne,

       Defendants.

## Order

The plaintiff is detained at Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq*..  He pursues First Amendment claims for denial of his access to the courts, free speech, and retaliation for exercising First Amendment rights.  The defendants have moved for summary judgment, which is granted for the reasons below.

### *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(1).  Genuine factual disputes are resolved in the nonmovant's favor, and reasonable factual inferences are drawn in favor of the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).  If the movant shows that "there is an absence of evidence to support the nonmoving party's case[,]" the nonmovant must come forth with competent, admissible evidence to demonstrate a material factual dispute for trial, not simply rest on pleadings and allegations.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1)(B).

### *Facts*

At times relevant, defendants Jelinek and Leebold worked as clinical therapists at Rushville Treatment and Detention Center.  Jelinek has earned a Doctorate of Psychology from Forrest Institute of Professional Psychology, and Leebold has earned a Master of Social Work from the University of Illinois at Urbana-Champaign.

Jelinek was the plaintiff's primary therapist from September 2009 to January 11, 2010.

During that time, the plaintiff was a member of "core group"—a group therapy treatment—that was facilitated by Jelinek and Leebold.  The group met ten times a week, for a total of 15 hours per week.  A group member was required to notify the facilitator if he was going to miss a session or be late.

From November 9, 2009, to January 5, 2010, the plaintiff missed core group therapy 16 times.  He was late four times, twice took a "lengthy break" in the middle of the session, and twice left early.  The plaintiff does not dispute that "[i]t is always permissible, and an excused absence, for any resident to attend legal affairs that arise," provided that the resident informs the facilitator before the absence.

On December 15, 2009, the plaintiff was 30 minutes late for core group therapy.  He had been attending an *in forma pauperis* review hearing before this court in *Fisher v. Williams*, 09-3303, a case involving an alleged ban on sharing legal work, which includes Jelinek and Payne as defendants.  The plaintiff does not dispute that he did not give prior notice to the group facilitators that he would be late.  When the plaintiff arrived at group therapy late, he interrupted a discussion regarding the rules of the group.  Specifically, Defendant Leebold was announcing that residents would no longer be allowed to take notes during group, which included writing about anything dealing with the courts or legal system.  According to the plaintiff, Leebold or Jelinek told the group that "Residents that write about the law while in group are engaging in 'criminal thinking.'  This will be noted in the Resident's Progress Notes and [] sent to the evaluators, which may keep them here . . . longer.  Rather, legal discussion or writing about the law are to be done on the housing unit only."  (d/e 23-1, p. 1).  According to the plaintiff, Leebold told the plaintiff that he had been irresponsible for being late to group.  The plaintiff "asked whether the discussion was part of a resident's focus time, or if it was a time for group processing."  Leebold refused to answer the question, so the plaintiff put the same question to Jelinek.  Jelinek warned the plaintiff that his attempt to manipulate by using the "tactic" of "splitting" was not going to work.  The plaintiff then asked Leebold if Leebold was ever going to answer the question.  At this, Jelinek had security escort the plaintiff from group.  (d/e 23-1, p. 1).  The plaintiff does not dispute that he had repeatedly refused to stop his disruptive behavior despite the facilitators' orders and was raising his voice, demanding that his question be answered.  (d/e 20, ¶ 25).  He asserts that his actions during group were only his attempt to be "transparent," meaning truthful and forthcoming with one's feelings as encouraged by the facilitators.  He does not dispute, though, that he did act in the way stated by the defendants.

The plaintiff also does not dispute that, on December 21, 2009, Jelinek told the plaintiff that his behavior in group was creating an adversarial environment, and that his "threats of filing grievances and lawsuits against facilitators during core group sessions would be considered threats and intimidation."  He does not dispute that he was "specifically advised . . . that he could write grievances and lawsuits, but that the threats of them during core group sessions would no longer be tolerated."  (d/e 20, ¶ 29; d/e 23, ¶ 29).

A behavioral contract plan was drafted for the plaintiff to outline the conditions of his continued participation in group.  The plan cited his "continued absences and ongoing use of

tactics to disrupt group process and negatively impact his treatment progress." (d/e 23-2, p. 6). The contract cited "[o]ther problematic behaviors which contribute to an unhealthy and adversarial group environment and barriers to treatment include: 1) not being prepared for focuses; 2) threats and intimidation toward facilitators: i.e., Attack, Power and Control tactics, writing facilitator behaviors and words, etc.)." (d/e 23-2, p. 6). The plan required the plaintiff to stop his tardy and spotty attendance, to be prepared, and also stated:

> 3. I understand that further writing in journals during group about the facilitator's behavior and words creates a hostile and adversarial work/group environment, is considered threats and intimidation and will not be tolerated. Furthermore, I understand that continued threats of lawsuits and grievances against the facilitators are also considered threats and intimidation and will not be tolerated.

(d/e 23-2, p.7). The plaintiff refused to sign the contract and was accordingly removed from group therapy. He has not participated in group therapy since.

*Analysis*

The plaintiff challenges the rules in group therapy prohibiting him from taking notes discussing grievances and lawsuits. He asserts that the rules violates his First Amendment right to petition for redress of grievances, to access to the courts, and to engage in free speech.

The plaintiff retains those First Amendment rights that are consistent with the administrators' legitimate concerns in running the Rushville Treatment and Detention Center, concerns such as security, order, and rehabilitation. *See, e.g., Block v. Rutherford*, 468 U.S. 576 (1984). There is no doubt that the plaintiff's rehabilitation is a legitimate interest. The question is whether the group rules were "reasonably related" to the plaintiff's rehabilitation. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001)(. . . Turner provides the test for evaluating prisoners' First Amendment challenges . . .).

In determining whether the restriction was reasonably related to the plaintiff's rehabilitation, "substantial deference" is afforded to the professionals on the front lines. *See Beard v. Banks*, 548 U.S. 521, 529 (2006); *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982). The Supreme Court in *Youngberg* stated that decisions by "qualified professionals" on conditions of confinement were entitled to deference by the court, and that liability only attached if "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." 457 U.S. at 322. Similarly, the Seventh Circuit has held that "the state must ensure that considered judgment has been exercised": detainees are entitled to "the exercise of professional judgment as to the needs of residents . . . ." *West v. Schwebke*, 333 F.3d 745 (7th Cir. 2003). The *Turner* factors are analyzed against the back drop of that substantial deference.

The court concludes that the defendants did not violate the plaintiff's First Amendment

rights by prohibiting note-taking during the group therapy, restricting the topics of discussion during group therapy sessions, or prohibiting the plaintiff from threatening the defendants with lawsuits and grievances as a condition of continued group therapy. Those restrictions were rationally related to the government's legitimate interest in rehabilitating Rushville's residents. The defendants aver that taking notes "has been known to provide residents with masturbatory fantasy material" because sexual offenses are often discussed in group therapy. More relevant here, the defendants aver that allowing note-taking makes it difficult for the note taker to give his full attention to the therapy, and that the plaintiff's practice of writing down the facilitator's words and commenting as he took notes was "disruptive to the group, removed the focus of the time from the therapy . . . ." (d/e 20, ¶ 25).

The First Amendment does not demand that a resident be allowed to manipulate and disrupt group therapy. If it did, group sessions would be a free-for-all, rather than a focused effort on rehabilitation. The plaintiff had plenty of other outlets to voice his complaints. *See Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)(discussing factors for analysis first amendment challenge by incarcerated plaintiff). He was in no way deterred from filing grievances or pursuing complaints in court.[1] He was only expected to exercise his rights without disrupting the group or intimidating the facilitators. He asserts that the defendants often remarked that filing grievances and lawsuits was counter-therapeutic, but those remarks would not prevent a person of "ordinary firmness" from exercising First Amendment rights. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).[2] In short, there is no evidence that the defendants' decisions were a "substantial departure from accepted professional judgment, practice, or standards." *Youngberg v. Romeo*, 457 U.S. at 315 (1982). The defendants' group therapy rules fall comfortably within the defendants' professional discretion. It was up to the

---

[1]The plaintiff asserts in his response that Jelinek told him that the rule against writing notes on the facilitators' actions during group applied both in and out of group and included grievances and legal papers. This directly contradicts his admission that Jelinek told him that "he could write grievances and lawsuits, but that threats of them *during core group sessions* would no longer be tolerated." (d/e 20, para. 29; d/e 23, para. 29)(emphasis added). It also directly contradicts his deposition testimony that he could write his notes any time other than during class. (Plaintiff's Dep. pp. 38-39); *Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 533 (7th Cir. 1999)("It is a well-settled rule of this Court that a plaintiff cannot create an issue of material fact merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition.").

[2]The plaintiff does not seem to be asserting that he had a First Amendment right to threaten the facilitators with lawsuits and grievances, nor does the Court believe that he has such a right. *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009)("But it seems implausible that a threat to file a grievance would itself constitute a First Amendment protected grievance."). In any event, even if the plaintiff has a First Amendment right of free speech to threaten a lawsuit or grievance, it would be subject to the legitimate interest of the facility in preventing the harassment and intimidation of its employees, and in facilitating group therapy.

defendants' to determine what conduct would and would not be allowed during group therapy sessions, and also up to them to determine when a resident was being manipulative and disruptive in group. The plaintiff disagrees with those decisions, but it is not his call. Nor is it the court's call to decide how group therapy should be run.

The plaintiff also contends that the defendants' actions were taken in retaliation for his prior grievances and lawsuits. Yet he does not dispute his many absences and tardies, his failure to notify the facilitator of planned absences and tardies, his disruptive behavior at the December 15th session, despite the facilitators' repeated warnings to stand down, and his refusal to follow the rules of the group. There is no evidence that the plaintiff's removal from group was in retaliation for any protected First Amendment activities. For example, there is no evidence that the lawsuits and grievances filed before the plaintiff was removed were the reason for that removal, even in part. And, as discussed above, the plaintiff had no First Amendment right to disrupt and distract the group by taking notes and discussing his plans for legal action.

Lastly, the plaintiff believes that the real reason he was forbidden from taking notes was to deny him access to the courts: the defendants "removed me from treatment for writing the words and actions of the Defendants to prevent me from using these written works in a legal action or grievance against them." (d/e 23, p. 13). There is no evidence, though, that the plaintiff was prevented from filing any grievances or pursuing any legal actions, or that his inability to take notes during group sessions affected his ability to pursue any meritorious claim.

IT IS THEREFORE ORDERED:

1) The defendants' motion for summary judgment is granted (d/e 20). The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff. All pending motions are denied as moot and this case is terminated, with the parties to bear their own costs.

2) If the plaintiff wishes to appeal this judgment, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c).

Entered this 3rd Day of August, 2011.

**\s\Harold A. Baker**

_____

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE